380 So.2d 550 (1980)
In re the GUARDIANSHIP OF Helen F. BOHAC, Incompetent.
No. 79-1022.
District Court of Appeal of Florida, Second District.
February 29, 1980.
*551 William H. Grace of Allen, Knudsen, Swartz, DeBoest, Rhoads & Edwards, P.A., Fort Myers, for appellant Heil.
Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee Bohac.
GRIMES, Chief Judge.
This is an appeal from an order denying a guardian's petition to make certain inter vivos gifts of her ward's property for estate and income tax planning purposes.
On September 29, 1976, the court appointed Doris Heil guardian of the person and property of Helen F. Bohac on grounds of mental incompetency. On December 20, 1978, Mrs. Heil filed a petition seeking authority to make inter vivos gifts of $400,000 out of an estate of $950,000. According to the petition, Mrs. Bohac, who was 78 years old, was a permanent resident of a nursing home where she was receiving good care. A doctor's report attached to the petition reflected the opinion that Mrs. Bohac was totally incompetent and would remain so. The proposed gifts would result in an income tax saving to the estate of about $15,000, and if Mrs. Bohac survived for three more years, the total estate tax savings would amount to approximately $26,000. Even after the gifts, Mrs. Bohac's after tax income would be more than twice her estimated annual cost of living.
The recipients of the gifts were to be two daughters of a sister of Mrs. Bohac's deceased husband, a daughter of the brother of Mrs. Bohac's stepmother and a nephew. The nephew was the only living blood relative of Mrs. Bohac. Mrs. Bohac had executed her last known will on March 12, 1975, and in that will she left her entire estate to her husband (now deceased) but provided that if he did not outlive her it would pass in equal shares to those of six named persons who survived her. The four persons designated to receive the inter vivos gifts were among the six persons who would inherit should she die.[1]
The court appointed a guardian ad litem for Mrs. Bohac, and then, after hearing, it *552 denied the petition. In the order of denial the court found that the individuals to whom the guardian wished to make gifts were not members of Mrs. Bohac's family and that the guardian had not shown a donative intent on the part of her ward.
There are no reported appellate decisions in Florida on the authority of a guardian to make gifts of her ward's property. However, many other jurisdictions have acknowledged the existence of such authority. Even without specific statutory authorization, a number of states have recognized the inherent power of the court to permit a guardian to make applications of funds of an incompetent for the benefit of the latter's relatives.[2] Where the ward had a legal obligation of support, the question was easy.[3] In those cases in which there was no legal obligation of support, the courts generally have based their power or that of the guardian upon findings with respect to what provision the incompetent herself would have made if she were sane.[4] This principle has been called the "doctrine of substituted judgment."[5] Under this principle, proposed inter vivos gifts for tax planning purposes have been both approved and disapproved.[6]
In its new probate code, Florida has adopted a specific statute to deal with gifts for tax purposes. Section 744.441(17), Florida Statutes (1979), reads:
744.441 Powers of guardian upon court approval.  After obtaining approval of the court in accordance with s. 744.447, a guardian of the property may:
.....
(17) Make gifts of the ward's property to members of the ward's family in estate and income tax planning procedures.
The guardian ad litem seeks to uphold the order of denial primarily on the basis that the proposed recipients of the gifts are not members of Mrs. Bohac's family as the statute requires. While the guardian ad litem cannot point to a statutory definition of the word family, he argues that it should be limited to a spouse or blood relative. Since the legislature did not choose to define family, we are not inclined to impose an arbitrary definition. Rather, we believe that one's family may vary under the circumstances. In this connection, we find the case of In re Freeman's Estate, 171 Miss. 147, 157 So. 253 (1934), to be instructive. There, in upholding an order authorizing a guardian to pay a monthly allowance for the support of the ward's stepmother, the Supreme Court of Mississippi construed the word family as it appeared in the statute as follows:
The word "family," as defined by the lexicographers, is one of broad meaning and may include persons whom the ward, under normal conditions, would be under no legal duty to support. The measure of a guardian's authority to apply any part of the ward's estate to the maintenance and support of the ward's family is found in the mentioned statute, but the statute nowhere defines the word "family" in this connection. Consequently, the question of who is and who is not a member of the ward's family within the meaning of this statute must be determined from the particular facts involved, and by a process of inclusion and exclusion. The word will always be construed to include those whom the ward, under normal conditions, would be under legal duty to support, such as his wife and dependent children, and under some circumstances may include others.
157 So. at 253-54.
On the other hand, we cannot accept the guardian's argument that the court erred in considering donative intent solely *553 because the statute says nothing about this subject. Donative intent is one of several factors which are pertinent to the application of the doctrine of substituted judgment.[7] While the statute also makes no reference to substituted judgment, we cannot believe that the legislature intended to preclude the court from considering what the ward would have done if she were sane. Otherwise, the court would have to approve a gift to an only son whom the ward had specifically disinherited in her will simply because it would save taxes. While the statute authorizes the court to approve gifts for the purpose of income and estate tax planning, such approval is necessarily predicated upon the court's determination that this is what the ward would want to do if she were competent.
Tested by the foregoing principles, we cannot say the court erred in refusing to approve the gifts. The proposed recipients of the gifts were not close relatives, and only one of them had ever lived with Mrs. Bohac. Also, while Mrs. Bohac had remembered them in her will, she had made no gifts to them when she was competent. In the final analysis, the court must have great latitude in determining whether or not to approve a gift for the purpose of tax planning, and we find no abuse of discretion in this case.
AFFIRMED.
SCHEB and OTT, JJ., concur.
NOTES
[1] The record does not state whether the other two beneficiaries are alive and does not describe their relationship to Mrs. Bohac.
[2] Annot., 24 A.L.R.3d 863 (1969).
[3] Brackett v. Glaze, 72 Ga. App. 314, 33 S.E.2d 733 (1945); Martin v. Martin, 55 Ohio L.Abs. 31, 88 N.E.2d 59 (1949).
[4] In re Buckley's Estate, 330 Mich. 102, 47 N.W.2d 33 (1951).
[5] In re duPont, 41 Del. Ch. 300, 194 A.2d 309 (1963).
[6] Compare In re Carson, 39 Misc.2d 544, 241 N.Y.S.2d 288 (1962), with In re Turner, 61 Misc.2d 153, 305 N.Y.S.2d 387 (1969).
[7] Other factors of primary importance include the permanency of the ward's condition, the size and nature of the ward's estate, the needs of the ward and the proposed recipients, the extent to which the recipients of the gifts may vary from those who would inherit in the natural course of events, the affinity or intimacy between the ward and the recipients, and whether they are dependent upon the ward for support. In re Guardianship of Christiansen, 248 Cal. App.2d 398, 56 Cal. Rptr. 505 (1967); In re Fleming's Estate, 173 Misc. 851, 19 N.Y.S.2d 234 (1940).