584 So.2d 1098 (1991)
Lorraine L. PENTUIK, As Personal Representative of the Estate of Edward Mackey, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 91-221.
District Court of Appeal of Florida, First District.
August 16, 1991.
*1099 Helen M.E. Stevens of Florida Rural Legal Services, Inc., Fort Meyers, for appellant.
Anthony N. DeLuccia, Jr., District Legal Counsel, Dept. of Health and Rehabilitative Services, Fort Meyers, for appellee.
SHIVERS, Judge.
This appeal is from a final order entered by a Client Appeal Hearings Officer affirming the Department of Health and Rehabilitative Services' denial of Medicaid benefits under the Institutional Care Program. We reverse.
Edward Mackey suffered a heart attack in 1968. He could no longer take care of himself as his wife had died, so he moved in with his daughter  Lorraine Pentuik. At his daughter's he had a walker, a wheelchair, and a hospital bed. He could manage to get from the bed to the bathroom and to the dining room table. A trapeze had been installed over the hospital bed. Beginning in 1968, Mackey lived with his daughter Lorraine for the next twenty two years. During that time Mackey received income from social security and a pension. His expenses were minimal, and a substantial amount of his savings was deposited in an account held jointly by Mackey and his grandson Ronald.
Mackey's health began deteriorating in 1985. In January 1990 Mackey was hospitalized for two weeks with breathing problems. After his release, he learned he needed prostate surgery. He was hospitalized again on February 6, 1990. On February 7  at Mackey's request  Ronald withdrew his half of the savings account and wrote six checks for the remaining half made out to Mackey's two daughters, Ronald and three other grandchildren. Mackey signed the checks. The prostate surgery was performed on February 8. The children and grandchildren spent all the money.
Following the prostate surgery, Mackey became incontinent. He lost control of his bowels and bladder and the use of his limbs. His arthritis worsened so that his daughter could not lift him to get a diaper under him. He was released from the hospital into a nursing home as a "total care" patient on March 5, 1990. On May 14, 1990, Ronald applied for Institutional Care Program (ICP) benefits on Mackey's behalf. ICP is a Medicaid program run by the Department of Health and Rehabilitative Services (HRS). On July 23, 1990, HRS denied the application on the ground Mackey transferred the savings account assets without receiving compensation. A period of ineligibility for ICP benefits was imposed from February 1990 through April 1991. The nursing home notified Mackey and his family that Mackey might be evicted unless the nursing home bills were paid.
Mackey appealed the denial of ICP benefits. An administrative hearing was convened at the nursing home on November 29, 1990. Ronald testified he transferred the money out of the savings account under Mackey's instructions; but since it was a joint account, Ronald acknowledged he could have transferred the entire account at any time. Ronald said Mackey gave away the money because Mackey "was *1100 afraid that he was going to die in this operation and it would ease his mind to disburse it." Lorraine testified that Mackey planned on giving away the money for years because Mackey was afraid of dying. She said her father was sure the prostate operation would kill him. Lorraine expected Mackey to return to her home if he lived through the operation; but Mackey's incontinence and inability to ambulate after the operation made it impossible for Lorraine to care for him.
The hearing moved to Mackey's room. Mackey said he gave away the money "Cause I don't think I was going to live through it and I wanted them to enjoy it while I was alive." Mackey said he expected to live with Lorraine again if he survived the operation. Mackey was asked if he thought the state would take care of him if he gave away his money. He answered, "No, I didn't think the state had anything to do with it."
The hearing officer denied the appeal on the ground that Mackey did not carry his burden of proving that the transfer occurred exclusively for a reason other than to become Medicaid eligible pursuant to F.A.C. Rule 10C-8.0181(1)(b). Mackey died three weeks after the hearing officer's order was entered. Lorraine was appointed as Mackey's personal representative.
Florida Administrative Code Rule 10C-8.0181 deals with the effect of a transfer of assets for the purpose of establishing Medicaid eligibility. Subsection (1) states that
If an individual who is applying for ... nursing facility services ... transfers assets within 30 months of application [and after July 1, 1988] without fair compensation, ineligibility for these services will exist for the number of months determined by dividing the total uncompensated value of the transferred assets by the statewide average monthly private-pay amount at the time of application, as determined by the department for care in a skilled facility.
Subsection (1)(b) states that with certain exceptions (not applicable in this case), "the department must assume the transfer occurred to become Medicaid eligible unless the individual can prove otherwise... . If the client can successfully prove that the transfer occurred exclusively for a reason other than to become Medicaid eligible, no penalty will be imposed."
Rule 10C-8.0181 implements 42 U.S.C. § 1396p, which deals with the effect of a transfer of assets on an application for a medical assistance grant under the Social Security Act. See generally, Crider v. Department of Health and Rehabilitative Services, 555 So.2d 408, 409 (Fla. 1st DCA 1989) (explaining in detail why HRS must adopt rules to implement Florida's voluntary participation in subchapter XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.). Subsection 1396p(c)(1) states
the State plan must provide for a period of ineligibility for nursing facility services ... in the case of an institutionalized individual who ... at any time during or after the 30-month period immediately before the date the individual becomes an institutionalized individual or, if the individual is not so entitled, the date the individual applies for such assistance while an institutionalized individual disposed of resources for less than fair market value.
Subsection (c)(2) states
An individual shall not be ineligible for medical assistance by reason of [subsection (c)(1)] to the extent that ... (C) a satisfactory showing is made to the State that (i) the individual intended to dispose of the resources either at fair market value, or for other valuable consideration, or (ii) the resources were transferred exclusively for a purpose other than to qualify for medical assistance; or (D) the State determines that denial of eligibility would work an undue hardship.
Under Florida Administrative Code Rule 10C-8.0181(1)(b) and 42 U.S.C. § 1396p (c)(2)(C)(ii), a burden is placed upon the client to prove any transfer of funds without fair compensation occurred exclusively for a reason or purpose other than to become eligible for Medicaid benefits. In reviewing a denial of benefits based on a failure to meet that burden, the standard of review is whether the hearing officer's decision is supported by competent substantial evidence. See Health Care and *1101 Retirement Corp. of America, Inc. v. Department of Health and Rehabilitative Services, 559 So.2d 665 (Fla. 1st DCA 1990).
In the case before us, we find that Mackey proved the transfers of funds to his children and grandchildren occurred exclusively for reasons other than to become eligible for Medicaid benefits; and the hearing officer's finding to the contrary is not supported by competent substantial evidence. The evidence showed that Mackey expected to resume living with his daughter Lorraine if he survived the operation. There is no evidence Mackey or his family had reason to anticipate that Mackey would become incontinent or unable to ambulate following the operation. Further, the monies in the money market account had been held jointly by Mackey and his grandson since 1986 and the grandson could have transferred the account at any time. Accordingly, we reverse and remand for payment of ICP benefits from May 14, 1990, which is the date of application for benefits, through January 7, 1991, which is the date of Mackey's death.
REVERSED and REMANDED.
ZEHMER and KAHN, JJ., concur.