**NEW YORK STATE BAR ASSOCIATION, Plaintiff,**

v.

**Janet RENO, in her official capacity as Attorney General of the United States of America, Defendant.**

No. 97–CV–1768.

United States District Court, N.D. New York.

April 7, 1998.

Nixon, Hargrave, Devans & Doyle, Albany, NY, (Daniel Hurteau, of counsel), for Plaintiff.

U.S. Department of Justice, Civil Division, Washington, DC (Sheila Lieber, Eric S. Angel, of counsel), for Defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff, the New York State Bar Association ("NYSBA"), seeks to enjoin the Attorney General of the United States from enforcing section 4734 of the Balanced Budget Act of 1997, which was incorporated into section 217 of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320a–7b(a). Plaintiff asserts that section 4734 violates the First and Fifth Amendments to the United States Constitution.

## I. BACKGROUND

### A. Statutory Background

Before Congress enacted section 217 of the Health Insurance Portability and Accountability Act of 1996, certain transfers of assets up to 36 months prior to an application for Medicaid benefits and certain transfers to trusts up to 60 months prior to application, could result in a period of ineligibility for Medicaid benefits. 42 U.S.C. § 1396p(c). In enacting section 217, Congress left the ineligibility period intact, but added certain criminal penalties. Essentially, section 217 made it a crime to dispose of assets in order to become eligible for Medicaid benefits if the disposition of assets "resulted in the imposition of a period of ineligibility." § 1320a–7b(a)(6) (sometimes referred to as the "Granny Goes to Jail Act"). Violators were subject to fines of up to $25,000 or imprisonment for up to 5 years, or both. *Id.*

A number of organizations lobbied for the repeal of section 217, including the NYSBA. Rather than repeal the Granny Goes to Jail Act, Congress amended section 217 by enacting section 4734 of the Balanced Budget Act of 1997. Section 4734, which became effective August 5, 1997, struck the former language and added a provision making it illegal to counsel or assist an individual to dispose of certain assets to qualify for Medicaid:

**Criminal penalties for acts involving Federal health care programs**

(a) Making or causing to be made false statements or representations

Whoever—

\*\*\*

(6) for a fee knowingly and willfully counsels or assists an individual to dispose of assets (including by any transfer in trust) in order for the individual to become eligible for medical assistance under a State plan under subchapter XIX of this chapter, if disposing of the assets results in the imposition of a period of ineligibility for such assistance under section 1396p(c) of this title, shall ... (ii) in the case of such a statement, representation, concealment, failure, conversion, or provision of counsel or assistance by any other person, be guilty of a misdemeanor and upon conviction thereof fined not more than $10,000 or imprisoned for not more than one year, or both.

42 U.S.C. § 1320a–7b(a).

While section 4734 was in conference,[1] the Congressional Research Service ("CRS") prepared a memorandum, dated July 11, 1997, analyzing the legal and constitutional issues raised by the proposed language of section 4734. CRS expressed concern that the language would infringe the First Amendment, noting: "To the extent that the provision would prohibit counseling about le-

---

1. Both the House and Senate versions contained identical language.

gal activities, a court would seem likely to declare it unconstitutional." (Witmer Aff., Ex. F at 2).

Congress nevertheless passed the provision without modification, and the President signed section 4734 into law.

### B. Procedural Background

Plaintiff filed the instant motion for a preliminary injunction on January 27, 1998. After a number of extensions and adjournments, Defendant now states that it will neither defend the constitutionality of 42 U.S.C. section 1320a–7b(a)(6) nor enforce its criminal provisions. On March 11, 1998, Attorney General Janet Reno notified the United States House of Representatives and the United States Senate that the Department of Justice would not enforce the aforementioned criminal provisions. Not surprisingly, Defendant now argues that a preliminary injunction is no longer needed.

In response, NYSBA filed opposition arguing that its members' free speech rights are still being chilled. Essentially, NYSBA argues that section 4734 is unconstitutional for the following reasons: (1) it violates the First Amendment because it unconstitutionally restricts free speech; (2) it violates the First Amendment because it is overly broad; and (3) it violates the Fifth Amendment because it is vague.

## II. DISCUSSION

### A. Standing

Initially, the court confronts the issue of the NYSBA'S standing to bring this action. "The notion that an organization might have standing to assert its members' injury has roots in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), where the Court noted that for the purpose of determining the scope of the NAACP's rights as a litigant, the association 'and its members are in every practical sense identical.'" *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 1534, 134 L.Ed.2d 758 (1996) (quoting *Patterson*, 78 S.Ct. at 1170). In *Patterson*, the Court permitted the NAACP to rely on violations of its members' First Amendment associational rights in suing to bar the State of Alabama from compelling disclosure of the association's membership lists. 78 S.Ct. at 1170.

The modern version of this doctrine provides that an organization has standing to sue on behalf of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 45 F.3d 58, 61 (2d Cir.1995) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)); *see also Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir.1993) (stating and applying *Hunt* test).

It is clear that under the associational standing test, the New York State Bar Association may bring the instant constitutional claims. First, the affidavits of attorney Witmer, a current member and past president of the NYSBA, and attorney Reixach, a current member of the Elder Law Section of the NYSBA, demonstrate that NYSBA members would otherwise have standing to sue in their own right. (Witmer Aff. ¶¶ 1–4, 9; Reixach Aff. ¶¶ 1–4). Second, the interests the NYSBA seeks to protect are germane to the organization's purpose as stated in Article II of its Bylaws. (Witmer Aff., Ex. B). Third, neither the constitutional claims asserted nor the relief requested requires the participation of the individual members in the lawsuit.

Consequently, the NYSBA has standing to bring the instant claims.

### B. Preliminary Injunction

In this circuit the standard for obtaining a preliminary injunction is well established. In order to obtain a preliminary injunction the movant must make an affirmative showing of: (1) irreparable harm; and either (2) likelihood of success on the merits; or (3) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in favor of the movant. *See, e.g., Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir. 1992); *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). However, "where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court ... should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989); *see also Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980).

### i. Irreparable Harm

■ As this Court recently noted, "[c]ourts in this circuit have repeatedly stated that '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Nakatomi Investments v. City of Schenectady,* 949 F.Supp. 988, 990 (N.D.N.Y.1997) (quoting *Borey v. National Union Fire Ins. Co.,* 934 F.2d 30, 34 (2d Cir.1991)). Irreparable injury, moreover, means injury for which a monetary award cannot be adequate compensation. *Jackson Dairy,* 596 F.2d at 72 (*citing Studebaker Corp. v. Gittlin,* 360 F.2d 692, 698 (2d Cir. 1966), *Foundry Services Inc. v. Beneflux Corp.,* 206 F.2d 214, 216 (2d Cir.1953)).

■ Turning to the first prong of this test, if the government's enforcement of section 4734 will deprive Plaintiff of its First Amendment rights, this constitutes *per se* irreparable injury to Plaintiff. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In *Elrod v. Burns,* the Supreme Court instructed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. at 373; *see also Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir.1991) (stating that even a temporary abridgment of the First Amendment

right to free expression constitutes irreparable injury).

Here, the Attorney General states that the Department of Justice will not enforce section 1320a–7b(a)(6)'s criminal provisions. The Attorney General argues that NYSBA members face no threat of criminal sanction. As a result, Plaintiff will not suffer any irreparable harm, thus obviating Plaintiff's need for injunctive relief. Defendant's argument, however, misses the point.

■ Although Defendant does not attack Plaintiff's case on ripeness grounds, the question of irreparable harm in this context is inextricably intertwined with the issue of ripeness. Ripeness is "peculiarly a question of timing," *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974), intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In determining whether a matter is ripe, courts use a two-pronged test: (1) whether the issue is fit for review, and (2) whether injury or hardship will result if judicial consideration is withheld. *AMSAT Cable v. Cablevision of Conn.,* 6 F.3d 867, 872 (2d Cir.1993); *see also In re Drexel Burnham Lambert Group Inc.,* 995 F.2d 1138, 1146 (2d Cir.1993); *Abbott Labs.,* 87 S.Ct. at 1515–16.

■ Among the factors affecting whether a matter is fit for judicial decision is "whether the issue is purely legal or whether 'consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to enforce the regulations.'" *In re Combustion Equip. Assoc., Inc.,* 838 F.2d 35, 38–39 (2d Cir.1988) (quoting *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 1528, 18 L.Ed.2d 704 (1967)). Here, the matter is fit for judicial review because the issue is purely legal; the First Amendment challenge will not be significantly clarified by further factual development. *See, e.g., Sanger v. Reno,* 966 F.Supp. 151, 160 (E.D.N.Y. 1997).

■ Turning to the question of whether injury or hardship will result if judicial consideration is withheld, this is where the question of ripeness and the injunctive requirement of irreparable harm converge. In assessing the hardship to the parties of withholding judicial resolution, the question is whether the challenged action creates a direct and immediate dilemma for the parties. *See Abbott Labs.,* 87 S.Ct. at 1517. Hence, when relief against the enforcement of a criminal statute is sought, a plaintiff generally must show either actual prosecution under the statute or that a sufficiently real and immediate threat of prosecution exists. *See, e.g., Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961).

■ The customary ripeness analysis is, however, relaxed somewhat in circumstances involving a facial challenge implicating the First Amendment. *See, e.g., New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995); *Martin Tractor Co. v. Federal Election Comm'n,* 627 F.2d 375, 380 (D.C.Cir.1980); *Sanger,* 966 F.Supp. at 161. Thus, while "the mere existence of a statute ... is ordinarily not enough to sustain a judicial challenge," *National Student Ass'n v. Hershey,* 412 F.2d 1103, 1110 (D.C.Cir.1969), in contesting the constitutionality of a criminal statute, "it is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979) (quoting *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974)); *see also Martin Tractor,* 627 F.2d at 380 (noting that "[r]easonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim"); *Gonzales,* 64 F.3d at 1499–1500.

Here, the parties have staked out starkly opposing positions on the issue of whether a threat of enforcement presently exists. The Attorney General assures the Court that she will not enforce section 4734. Plaintiff responds that the Attorney General's statements do not eliminate the threat of future enforcement, and, in fact, may not represent the position of the President of the United States—who has been silent regarding his intentions concerning enforcement.

Fortunately, the Court need not resolve this issue definitively because the Court finds that Plaintiff will suffer injury irrespective of the imminent enforcement of section 4734.

Governmental infringement of the First Amendment does not exist merely in the *imposition* of criminal sanctions. As the Supreme Court noted in *Elrod,* the First Amendment is implicated whenever free speech is "either threatened or in fact being impaired at the time the relief [is] sought." *Elrod,* 96 S.Ct. at 2689. "These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *National Ass'n for Advancement of Colored People v. Button,* 371 U.S. 415, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); *see also O'Brien v. Caledonia,* 748 F.2d 403, 409 (7th Cir.1984) ("When the threat of sanctions is so imminent, we must presume a deprivation of the First Amendment rights.").

■ Even in the absence of hardship from imminent prosecution or threat of prosecution, however, a "claim might still be ripe under First Amendment jurisprudence if ... First Amendment rights have been restricted or 'chilled.'" *Sanger,* 966 F.Supp. at 162; *see also New York Public Interest Research Group, Inc. v. Village of Roslyn Estates,* 498 F.Supp. 922, 928 (E.D.N.Y.1979). "First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the *in terrorem* effect of the statute." *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977) (citing *NAACP v. Button,* 83 S.Ct. at 337–38).

The reasons for relaxing the ripeness analysis in this context is the chilling effect that unconstitutional burdens on free speech may occasion:

First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss. In

awide variety of settings, courts have found First Amendment claims ripe, often commenting directly on the special need to protect against any inhibiting chill. 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532.3, at 159.

 The irreparable harm that exists here is the potential for self-censorship among NYSBA members. NYSBA members have an ethical obligation as attorneys to respect and uphold the law. In fact, Plaintiff's affidavits state that section 4734 actually has resulted in NYSBA members refraining from providing certain counsel and assistance to clients. (*See, e.g.,* Burke Aff. ¶ 11 ("Section 4734 has had a chilling effect and has exerted significant pressure on me not provide such advice to clients.")). Furthermore, Defendant provides no assurance that NYSBA members will not be prosecuted on some future date or that state Medicaid fraud units will also not enforce section 4734.

Accordingly, inasmuch as section 4734 remains part of the laws of the United States, which NYSBA members are ethically bound to uphold, the limitation on free speech found in section 4734 constitutes irreparable injury to Plaintiff. Thus, Plaintiff has satisfied the first of the two elements required for a preliminary injunction.

### ii. Likelihood of Success

 The second element requires the Court to determine whether Plaintiff is likely to succeed on the merits of its constitutional challenge. As this Court stated in *Nakatomi Investments,* "it has long been axiomatic that once a party shows that a regulation deprives them of a protected First Amendment interest, the burden shifts to the Government to justify the infringement." 949 F.Supp. at 990 (citing *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 803 n. 22, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), *City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 496, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986)).

At this time, however, it does not appear that the government contests the unconstitutionality of section 4734. Therefore, the Court must find that Plaintiff will likely succeed on the merits of its claims.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is GRANTED. It is hereby ORDERED that pending final judgment, the United States, its agents, servants, employees, attorneys, and all persons in active concert and participation with Defendant are enjoined from commencing, maintaining, or otherwise taking action to enforce 42 U.S.C. § 1320a–7b(a)(6).

**IT IS SO ORDERED.**