835 So.2d 357 (2003)
Stella THOMPSON, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D02-1016.
District Court of Appeal of Florida, Fifth District.
January 24, 2003.
*358 David H. Jacoby, Palm Bay, for Appellant.
Eric D. Dunlap and William D. Rowland, Orlando, for Appellee.
PETERSON, J.
Stella Thompson appeals a final order of the Department of Children and Families (DCF) that denied Ms. Thompson's application for Medicaid Institutional Care Program (ICP) benefits.
Ms. Thompson, a 71-year-old woman suffering from a leg infection, transferred from a Virginia hospital to a Florida nursing home. At the hearing that led to the denial of ICP benefits, we note that no evidence was presented that Ms. Thompson's health would ever allow her to live outside of a nursing home. Indeed, it was reported that her health continues to deteriorate.
Ms. Thompson's sister, Josephine Greene, also lives in Florida near the nursing home caring for her sister. Three months after her sister's arrival in Florida, Ms. Greene used the power of attorney granted to her by her sister to purchase for her sister a life estate in a condominium apartment owned and occupied by herself. The life estate was for the term of Ms. Thompson's life, was purchased by a transfer of $18,250 from Ms. Thompson to Ms. Greene and the stated purpose of the purchase "was to ensure that [Ms. Thompson] would always has [sic] a place to live."
Ms. Greene then applied for ICP benefits on behalf of her sister in order to pay for the nursing home room and board. DCF denied the benefits when it interpreted the $18,250 depletion of Ms. Thompson's assets as an improper transfer that was accomplished in order to meet the financial eligibility requirement of the ICP. It was DCF's view that Ms. Thompson failed to demonstrate that the fair market value of the life estate purchased in her sister's condominium had a significant value approaching the price paid of $18,250.
A hearing was requested and held following the initial denial at which time Ms. Thompson's professional appraiser testified in support of the purchase price of $18,250. The appraisal was flawed in its assumption that Ms. Thompson is of "average health" and that there is an "open market" for life estates.[1] The hearing officer found that although Ms. Thompson acquired some value for her purchased life estate, that value was not substantively shown. Neither was there any evidence to establish what proceeds would be expected if the life estate were to be sold on the open market in the geographical area. *359 The final order resulting from the hearing concluded that "there was insufficient proof that the transfer occurred solely for a reason other than to become Medicaid eligible."
The Medicaid program was enacted in 1965 as a cooperative federal-state endeavor designed to provide health care to needy individuals. 42 U.S.C. § 1396; Atkins v. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986). The program provides federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). States are not required to participate in the program, but once a state chooses to adopt the program it must establish a plan conforming with the requirements of the federal statute. Id. Florida has elected to participate in the program and has assigned DCF the task of administering the program. § 409.901.920, Fla. Stat. (2002); 65 Fla.Admin.Code R. 65A-1.701.
After the Medicaid program was enacted, a field of legal counseling arose involving asset protection for future disability. The practice of "Medicaid Estate Planning," whereby "individuals shelter or divest their assets to qualify for Medicaid without first depleting their life savings," is a legal practice that involves utilization of the complex rules of Medicaid eligibility, arguably comparable to the way one uses the Internal Revenue Code to his or her advantage in preparing taxes. See generally Kristin A. Reich, Note, Long-Term Care Financing CrisisRecent Federal and State Efforts to Deter Asset Transfers as a Means to Gain Medicaid Eligibility, 74 N.D. L.Rev. 383 (1998). Serious concern then arose over the widespread divestiture of assets by mostly wealthy individuals so that those persons could become eligible for Medicaid benefits. Id.; see also Rainey v. Guardianship of Mackey, 773 So.2d 118 (Fla. 4th DCA 2000). As a result, Congress enacted several laws to discourage the transfer of assets for Medicaid qualification purposes.[2]See generally Laura Herpers Zeman, Estate Planning: Ethical Considerations of Using Medicaid to Plan for Long-Term Medical Care for the Elderly, 13 Quinnipiac Prob. L.J. 187 (1988). Recent attempts by Congress imposed periods of ineligibility for certain Medicaid benefits where the applicant divested himself or herself of assets for less than fair market value. 42 U.S.C. § 1396p(c)(1)(A); 42 U.S.C. § 1396p(c)(1)(B)(i); Fla. Admin. Code R. 65A-1.712(3).[3] More specifically, if a *360 transfer of assets for less than fair market value is found within 36 months[4] of an individual's application for Medicaid, the state must withhold payment for various long-term care services, i.e., payment for nursing home room and board, for a period of time referred to as the penalty period.[5] Fla. Admin. Code R. 65A-1.712(3). Medicaid does not, however, prohibit eligibility altogether. It merely penalizes the asset transfer for a certain period of time. See generally Omar N. Ahmad, Medicaid Eligibility Rules for the Elderly Long-Term Care Applicant, 20 J. Legal Med. 251 (1999).
Ms. Thompson contends that because her expert witness testimony on fair market value was the only one presented, the hearing officer should have ruled in her favor citing to Thomas v. Florida Department of Children and Families, 707 So.2d 954 (Fla. 4th DCA 1998). The trier of fact, however, may accept or reject all or any part of an expert's testimony and is in no way bound by uncontroverted expert opinion testimony. E.g., Weygant v. Fort Myers Lincoln Mercury, Inc., 640 So.2d 1092 (Fla.1994) (a jury may reject expert medical testimony when there exists relevant conflicting lay testimony); Easkold v. Rhodes, 614 So.2d 495 (Fla.1993) (jury may give expert opinion testimony whatever weight that it finds the testimony deserves); Tolley v. Dep't of Health and Rehabilitative Servs., 667 So.2d 480 (Fla. 5th DCA 1996) (the trier of fact may accept or reject all or any part of an expert's *361 testimony); Gordon v. Smith, 615 So.2d 843 (Fla. 4th DCA 1993) (when an expert has been hired and called to testify by one of the adversaries to a contested proceeding, there is nothing unreasonable or improper with the fact finder declining to accept the testimony of such an expert).
We agree with DCF that the transfer of assets from the medically disabled applicant to her sister in return for the right to a life estate in a condominium owned by and occupied by the sister was a sham to gain eligibility for ICP benefits in the absence of any competent evidence to support a reasonable purpose and a market value for the transfer.
AFFIRMED.
PLEUS and PALMER, JJ., concur.
NOTES
[1] The appraiser had the difficult, if not impossible, task of supporting a value of $18,250 that would be paid by a willing purchaser who would be content to share a condominium apartment with a stranger, Ms. Greene, from the date of purchase to the date of death of a 71-year-old person with deteriorating health.
[2] Congressional attempts in the last 30 years to amend the Medicaid program to make it more effective in reserving Medicaid for the truly needy included the passage of a provision aimed at attorneys which made it a crime to take a fee for advising a person to transfer assets in order to become eligible for Medicaid. 42 U.S.C. § 1320a-7b. The enforceability of this provision, however, is questionable given an opinion letter written by Attorney General Janet Reno to Speaker Newt Gingrich which states that the office of the Attorney General will not defend the constitutionality of Medicaid criminalization law. See generally Jason A. Frank, The Necessity of Medicaid Planning, 30 U. Balt. L.F. 29 (1999); see also New York State Bar Ass'n v. Reno, 999 F.Supp. 710 (N.D.N.Y.1998) (the executive branch of the federal government was enjoined from enforcing provision which criminalizes counseling or assisting an individual to transfer assets for Medicaid planning purposes).
[3] Fla. Admin. Code R. 65A-1.712(3) provides in pertinent part:

(3) Transfer of Resources and Income. According to 42 U.S.C. § 1396p(c), if an individual, the spouse, or their legal representative, disposes of resources or income for less than fair market value on or after the look-back date, the department must presume that the disposal of resources or income was done to become Medicaid eligible and impose a period of ineligibility for nursing facility care services or HCBS waiver services. The look-back period is 36 months prior to the date of application, except in the case of a trust treated as a transfer in which case the look-back period is 60 months prior to the date of application, but no earlier than October 1, 1993. These transfer policies apply to actual transfers made by applicants for institutional Hospice services that occur on or after October 1, 1998. Transfers made prior to October 1, 1998, will not be subject to a penalty.
(a) The department follows the policy for transfer of assets mandated by 42 U.S.C. §§ 1396p and 1396r. For transfers prior to October 1, 1993, transfer policies apply only to transfers of resources. For transfers on or after October 1, 1993, transfer policies apply to the transfer of income and resources.
* * *
(d) Except for allowable transfers described in 42 U.S.C. § 1396p(c)(2), in all other instances the department must presume the transfer occurred to become Medicaid eligible unless the individual can prove otherwise.
1. An individual who disposes of a resource for less than fair market value or reduces the value of a resource prior to incurring a medical or other health care related expense which was reasonably capable of being anticipated within the applicable transfer look back period shall be deemed to have made the transfer, in whole or part, in order to qualify for, or continue to qualify for, medical assistance.
* * *
(e) Each individual shall be given the opportunity to rebut the presumption that a resource or income was transferred for the purpose of qualifying for Medicaid eligibility. No period of ineligibility shall be imposed if the individual provides proof that they intended to dispose of the resource or income at fair market value or for other valuable consideration, or provides proof that the transfer occurred solely for a reason other than to become Medicaid eligible.
[4] The 36 month pre-application financial review period is referred to as the "look-back" period. An extended look-back of 60 months will apply when trust-related transfers are made.
[5] The period of ineligibility, or period of restricted coverage for medicaid institutional services, is generally calculated by the following formula: Dollar value of transfer divided by average monthly cost for one month of nursing home care equals the number of months of ineligibility for Medicaid institutional services.