911 So.2d 816 (2005)
HOULIHAN'S RESTAURANTS, INC., d/b/a Darryl's, Appellant,
v.
APAC-FLORIDA, INC., a Delaware Corporation, et al., Appellees.
No. 1D03-4755.
District Court of Appeal of Florida, First District.
August 11, 2005.
Rehearing Denied September 26, 2005.
*817 Charles S. Stratton and Gino Luzieti of Broad and Cassel, Tallahassee; Alan E. DeSerio, Brandon, for Appellant.
John T. Wettach, Jr. of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for Appellees.
VAN NORTWICK, J.
Houlihan's Restaurants, Inc. (Houlihan's) appeals a final judgment apportioning the proceeds of a condemnation award between Houlihan's and CNL APF Partners, Inc. (CNL), appellee. Because competent substantial evidence supports the apportionment by the trial court, we affirm.
Houlihan's leased premises owned by CNL and on those premises operated a restaurant. The lease provided that, in the event of a complete or partial eminent domain taking, Houlihan's had the option to terminate the lease.[1] In December *818 2001, the Florida Department of Transportation (DOT) obtained a partial taking of an area of the real property used for restaurant parking. Houlihan's then exercised its option to terminate the lease. Following mediation with the DOT, CNL obtained a condemnation award of $1,100,000. Thereafter, this action ensued to apportion the award between Houlihan's and CNL. Below, the trial court, sitting as finder of fact, apportioned Houlihan's $167,618.99 of the award, with the remainder of the condemnation award being apportioned to CNL. In making this apportionment, the trial court generally accepted the economic analysis of CNL's expert witness, Steve Metonis.[2]
On appeal, Houlihan's argues that the trial court erred in assigning a value to Houlihan's right to sublease the property when calculating the value of the respective interests in the property. CNL's expert had assigned a value for the sublease right in his calculations. Houlihan's argued below, and argues on appeal, that the value of the sublease was speculative since no sublease was ever granted by Houlihan's. On appeal, Houlihan's further argues that, in apportioning the condemnation damages award, it is contrary to the terms of the lease to assign value to the sublease right.[3] Finally, Houlihan's argues that CNL was bound to accept the higher of the two valuations of Houlihan's property interest proposed by CNL's expert. We find this latter argument without merit and reject it without further comment.
The parties have vastly divergent views of the appropriate standard of review for this appeal. Houlihan's submits that we should apply a de novo standard since the issues raised on appeal relate predominantly to the trial court's failure to interpret correctly the provisions of the lease and failure to apply principles of law relating to apportionment of condemnation proceeds. CNL, on the other hand, argues that abuse of discretion is the appropriate standard of review. We do not agree with either position. The rulings of the trial court consist primarily of factual findings relating to the value of the two parties' economic interests in the property. We review those factual findings under the competent substantial evidence standard. See Cordones v. Brevard County, 781 So.2d 519, 523 (Fla. 5th DCA 2001); Florida *819 Water Servs. Corp. v. Utils. Comm'n, 790 So.2d 501 (Fla. 5th DCA 2001).
Upon review of the record on appeal, we find competent substantial evidence in the testimony of CNL's expert witness supporting the trial court's finding that the value of the sublease right should be considered in determining the value of Houlihan's property interests. While Houlihan's expert witness certainly had a different view, and we may have reached a different result if we were the fact finders, it was the trial court's exclusive province, as the finder of fact, to accept all or part of the testimony of the expert witness. See, e.g., Weygant v. Fort Myers Lincoln Mercury, Inc., 640 So.2d 1092 (Fla.1994); Thompson v. Dep't of Children and Families, 835 So.2d 357 (Fla. 5th DCA 2003). Further, although section 17 of the lease addresses subleasing generally, the lease does not provide any guidance as to how the value of a sublease right is to be considered in making an apportionment of eminent domain damages. Section 6(d) provides only that "[i]f this Lease is terminated by reason of a taking, all damages awarded or sums paid in respect of a taking will become the property of Landlord and Tenant, respectively, as their interests appear immediately prior to the time of such taking." Thus, the consideration of the value of a sublease by the trial court is not contrary to the plain meaning of the condemnation clause of the lease.
Because no basis for reversal has been established, the final judgment is AFFIRMED.
WOLF, J. concurs and BENTON, J., dissents with written opinion.
BENTON, J., dissenting.
Under the terms of the parties' lease, because the lease was "terminated by reason of a taking, ... sums paid in respect of a taking w[ere to have] become the property of Landlord and Tenant, respectively, as their interests appear[ed] immediately prior to the time of such taking." (Emphasis supplied.) The trial court's analysis adopted a methodology that required speculation about costs the tenant would incur if it subleased after the taking. The fundamental difficulty with this approach was its failure to honor the governing provision of the lease.
NOTES
[1] Section 6(a) of the lease provides:

In the event that the whole or any material part of the building on the Premises or such a material portion of the land (for purposes hereof, "material" shall mean more than 20% of the building on the Premises or more than 40% of the land or more than 20% of the parking available on the Premises) shall be taken during the term of this Lease or any extension or renewal thereof for any public or quasi-public use under any governmental law, ordinance, regulation or by right of eminent domain, or shall be sold to the condemning authority under threat of condemnation with the result that the Premises cannot continue to be operated as the type of restaurant contemplated herein, or if all reasonable access to the adjacent roadways from the existing or comparable curb cuts shall be taken (any of such events being hereinafter referred to as a "taking"), Tenant shall have the option of terminating this Lease as of a date no earlier than the date of such taking, such termination date to be specified in a notice of termination to be given by Tenant to Landlord not fewer than fourteen (14) days prior to the date on which possession of the Premises, or part thereof, must be surrendered to the condemning authority or its designee.
[2] In its apportionment of the award, the trial court adopted the substance of Metonis' analysis except that the court excluded any consideration of CNL's reversionary interest in the property on the grounds that the reversionary interest was not considered in reaching the condemnation award of $1,100,000.
[3] Section 6(d) of the subject lease provides:

If this Lease is terminated by reason of a taking, all damages awarded or sums paid in respect of a taking will become the property of Landlord and Tenant, respectively, as their interests appear immediately prior to the time of such taking.