SILVERMAN, SCOTT J„ Associate Judge.
After a non-jury trial, the trial court found that appellees (hereinafter referred to as “Packo”) had not breached a non-compete agreement. The trial court also found that agreement nullified as a result of appellants’ (hereinafter referred to as “Cullum”) default on a companion lease. Cullum, the plaintiff below, appeals the trial court’s order, arguing that the court erred in respect to both the non-compete agreement and the lease. As we agree with Cullum in regard to the lease, we reverse the portion of the trial court’s order that found Cullum in default. We affirm, however, the trial court’s finding that Packo did not breach the non-compete agreement.

BACKGROUND

The parties entered into two agreements: (1) a five-year lease in which Packo leased his land and building to Cullum (“Lease”); and (2) a companion non-compete, non-disclosure, and non-solicitation agreement (“Agreement”). Under the terms of the Lease, Cullum was required to pay Packo $5,500 per month. If Cullum failed to pay by the fifth of the month, the Lease imposed a 10% late penalty. The Lease also required Cullum to pay the property taxes on the premises. Cullum could “break” the Lease by giving a year’s notice. If any default on the Lease was not cured within ten days, the Lease terminated.
The Agreement provided that, as long as the Lease was still in effect, Packo would not practice in a defined geographic area and would not target or solicit Cullum’s patients for a period of five years. A non-cured default on the Lease served to terminate the Agreement. Interestingly, the Agreement remained in effect even if Cul-lum decided to break the Lease by giving the requisite year’s notice.
In February 2005, Cullum provided Packo with one year’s notice that he intended to vacate the premises. On April 8, 2005, Packo notified Cullum that the Lease was in default as Cullum had failed to pay the annual property taxes that were due on April 1. Packo instructed Cullum to cure this default within ten days. At trial, Packo testified that the post office attempted delivery of Cullum’s property tax payment on April 16. Packo was not at his office to receive the payment on the *535 16th and, as a result, physically received the payment on either April 18 or 19. As Cullum could not prove that Packo actually received the check by April 18 — the last day of the cure period — Packo argues that Cullum failed to cure the default within ten days.
Cullum paid the May 2005 rent on April 30. After making the payment, Cullum discovered that his bank account possessed insufficient funds to cover the rent check. Before May 5, Cullum notified Packo’s leasing agent of the problem in order to avoid being assessed the 10% late penalty. The agent told Cullum that there was “no problem” and “not to worry about it.” The agent stated that she would simply rerun the check when it was returned. The agent re-ran the check and received the funds on May 17.
Shortly thereafter, Packo demanded that Cullum pay the 10% late penalty for the May 2005 rent payment. Cullum refused. Packo then notified Cullum that, due to his failure to cure the late May 2005 payment, the Lease and Agreement were terminated. Packo then began advertising that he planned to open a chiropractic practice on the premises currently leased to Cullum.
Cullum filed suit, seeking a declaration of the parties’ rights under both the Lease and the Agreement. Cullum also sought an injunction prohibiting Packo from advertising his intention to open a chiropractic practice on the premises. Cullum argued that the advertisement violated the Agreement. Packo forwarded several affirmative defenses, claiming that Cullum failed to timely cure the late May 2005 payment as well as the payment of property taxes. As a result of the non-cured defaults on the Lease, Packo argued that the Agreement was nullified.
On November 30, 2005, the trial court entered a final judgment for Packo. Regarding the May 2005 payment, the court found Cullum breached the Lease as a result of the payment being received after the fifth of the month and by not curing the default within 10 days. The trial court found:
The failure to deliver the rent into the hands of Suncastle [Packo’s leasing agent] by May 5, 2005 was the fault of the Plaintiff due to his initial NSF check. It was not through any delaying act of the Defendant or his agent.
The court did not discuss the agent’s apparent assurance to Cullum, prior to the fifth, that there was “no problem.” Regarding the property taxes, the trial court found:
The Plaintiff sent, by certified mail, a check for the taxes. The Plaintiff did not provide the Court with the U.S. Postal receipt for the tax check. The Defendant testified that the check was deposited on April 19, 2005 and that he deposits the checks the day he receives them. The only evidence before the Court of the date of the receipt of the tax check came from the Defendant. The Plaintiff provided no proof of any sort of the date of the receipt of the check, although that proof (the return receipt) was available to him. Therefore, the evidence before the Court is that the failure to pay the tax payment was not cured within ten (10) days as required by Section 7.01 of the lease.
Further, the trial court found no evidence that Packo had violated the Agreement. The trial court found Cullum in default under the Lease and, as a result, found the Agreement no longer bound Packo.

ANALYSIS

We first review the trial court’s conclusion that Cullum defaulted under the Lease. We review a trial court’s findings of fact for competent substantial evidence. *536 See Houlihan’s Rests., Inc. v. APAC-Fla., Inc., 911 So.2d 816, 818 (Fla. 1st DCA 2005). Here, the trial court found that Cullum defaulted by failing to cure the late May 2005 payment and failing to timely cure the payment of property taxes.
In regard to the property taxes, the record does not support the trial court’s finding. Packo himself testified that the postal service attempted delivery of the payment on April 16:
It was attempted on the front by the Postal Service on Saturday, April 16th. However, our office is not open on the 16th, so we received it on the 18th.
The envelope, submitted into evidence by Packo, contained a notation that delivery was attempted on “4/16.” Accordingly, the unrebutted evidence shows that Cullum delivered the check to Packo on April 16— well within the ten-day cure period. We see no reason why Cullum should be penalized for Packo’s failure to be available to accept payment. See Procacci v. Procacci, 729 So.2d 522, 523 (Fla. 4th DCA 1999) (explaining that “payment is considered ‘tendered’ on the date it is mailed, not the date that it was received”); see also Bensman v. DeLuca, 498 So.2d 645, 645 (Fla. 4th DCA 1986) (stating parties’ course of conduct showed that payment by check was considered tendered when postmarked); Brake v. Unemployment Appeals Comm’n, 473 So.2d 774, 774 (Fla. 3d DCA 1985) (“[A] letter properly addressed, stamped and mailed is presumed to have been received by the addressee.”); Neuman v. Ferris, 432 So.2d 641, 642 (Fla. 4th DCA 1983) (finding the mailing of a check constitutes delivery of payment when payee directs payor to pay by mail). See generally Waters v. Key Colony East, Inc., 345 So.2d 367 (Fla. 3d DCA 1977) (holding that a party who prevents or hinders performance cannot take advantage of the other party’s lack of performance).
Assuming, arguendo, that actual possession of the check controls, Packo raised the failure to cure as an affirmative defense and would thus bear the burden of proving the affirmative defense. See Hough v. Menses, 95 So.2d 410, 412 (Fla.1957) (placing the burden of proof on defendants to prove their affirmative defenses). On review, the record clearly demonstrates that Packo did not know whether he received the check within the cure period (April 18) or outside the cure period (April 19), as demonstrated by his following testimony:
I’m not sure if it’s the 18th or 19th.
Accordingly, even if actual delivery of the check mattered, Packo failed to satisfy his burden of proof that the check arrived after April 18. The only conclusion that can be drawn from the record is that nobody knows precisely when Packo took actual possession of the check. Thus, the record does not support the trial court’s finding that Cullum defaulted by not timely curing the property tax payment.
The trial court also found that Cullum defaulted under the Lease by failing to cure the May 2005 late rent payment. Again, the record does not support the trial court’s finding. The record is undisputed that the agent, speaking on behalf of Packo, told Cullum “not to worry about” the late payment and that it was “no problem.” An agent both speaks on behalf of and binds the principal. See Am. Lead Pencil Co. v. Wolfe, 30 Fla. 360, 11 So. 488, 491 (1892) (“Where there is a general agent to accomplish a certain purpose, and the agent acts within the general scope of his authority in effecting the object of the agency, his acts will bind his principal so far as third persons dealing with him in good faith are concerned.”). The very reason Cullum informed the agent of the problem was to avoid a potential late fee. Accordingly, the agent waived the requirement that Cullum pay *537 the 10% late fee. See LeNeve v. Via South Fla., LLC, 908 So.2d 530, 535 (Fla. 4th DCA 2005) (“Waiver is ‘the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right.’ Breaking down waiver into elements, this court has recognized that three circumstances give rise to a waiver: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right. Proof of these elements ‘may be express, or implied from conduct or acts that lead a party to believe a right has been waived.’ ” (citations omitted)).
Finally, the trial court found that Packo had not breached the Agreement. We affirm this finding. Although Packo placed an advertisement in the Yellow Pages, the ad was general in nature and not prohibited by the Agreement. In fact, Cullum, himself, testified that Packo had not yet solicited any of his patients.

CONCLUSION

The trial court erred when it found Cul-lum in default under the Lease. Accordingly, the Lease remains in effect and the Agreement has not been nullified. Although the trial court correctly found that Packo had not breached the Agreement by placing the advertisement in the Yellow Pages, neither the parties nor the trial court should interpret this decision as precluding any future causes of action based upon violations of the still valid Agreement.
AFFIRMED in part, REVERSED in part.
BENTON and LEWIS, JJ., concur.